FILED ___ ENTERED
___ LOGGED ___ RECEIVED

DEC 1 4 2011

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

GENERAL PARTS DISTRIBUTION, LLC,  \*
   Plaintiff,

v.                                                  Civil Action No. 11-cv-03556-JFM

KENNETH S ST. CLAIR,
   Defendant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Memorandum Opinion**

Presently pending before the Court is Plaintiff General Parts Distribution, LLC ("General Parts")' motion for a temporary restraining order and preliminary injunctive relief against Defendant Kenneth S. St. Clair ("St. Clair") for breach of restrictive covenants. *See* Doc. No. 2. For the following reasons, a temporary restraining order will be granted and the Court will hold a preliminary injunction hearing within the next fourteen days.

**I.    Background**

Plaintiff General Parts brings three claims against Defendant St. Clair, alleging breach of contract and misappropriation of trade secrets in violation of the Maryland Uniform Trade Secrets Act. Compl. ¶ 36-59. The claims relate to the alleged misappropriation of General Parts' trade secrets by St. Clair, a former General Parts employee who signed non-competition and confidentiality agreements with General Parts and now works for the Federated Location ("Federated"), a direct competitor of General Parts in the Waldorf, Maryland area. Id. at ¶ 27, 31, 32.

General Parts sells and supplies replacement products, accessories, supplies and equipment for virtually all makes of automobiles and also distributes and sells tools, equipment, chemicals, paint and accessories. *Id.* at ¶ 6. Federated is a newly opened location with no prior sales market in Waldorf. *Id.* at ¶ 29. General Parts' alleges that St. Clair is directly competing with General Parts in his employment with Federated because he is cultivating relationships with and selling parts to the same customers with whom he interacted and to whom he sold products during his employment with General Parts. *Id.* at ¶ 31.

St. Clair started as a joint venture partner with CARQUEST. *Id.* at ¶ 31. As a Store Manager, St. Clair was responsible for maintaining, expanding and soliciting customers and selling products to customers in and around Waldorf. *Id.* at ¶ 19. As part of this relationship, St. Clair signed a Joint Venture Agreement which contained a Covenant Not to Compete, on August 10, 2001. *See* Doc. No. 1 Ex. 1. The agreement sought to prevent St. Clair from working for a competitor within a 15-mile radius of the principal location of CARQUEST for a period of 1.5 years after leaving employment. On January 30, 2001, CARQUEST merged with several other corporate entities to form General Parts, which assumed the rights and liabilities under St. Clair's agreement with CARQUEST. Compl. ¶ 16.

On or around October 8, 2005, while working as an Associate Store Manager at General Parts' CARQUEST Auto Parts' store in Waldorf, St. Clair signed a Stock Agreement which contained a Covenant Not to Solicit/Not to Disclose. *Id.* at ¶ 17, 22. The agreement prevented St. Clair from disclosing General Parts' customer lists or soliciting business from its Key Account List for a period of 1.5 years after leaving employment. *See* Doc. No. 1 Ex. 2. In November 2011, St. Clair left General Parts and went to work for Federated. Compl. ¶ 26, 27. Shortly thereafter, General Parts filed the instant action.

In its Complaint, General Parts alleges that St. Clair has breached the Joint Venture Agreement's Non-Compete Covenant by becoming employed by Federated and seeking to compete with General Parts in the sale of auto parts within the Waldorf market (Count I). In addition, General Parts alleges that St. Clair is now soliciting General Parts' business customers to cease doing business with General Parts and to do business with Federated in violation of the Stock Agreement (Count II). Specifically, General Parts alleges that on December 2, 2011, St. Clair admitted to the Store Manager for General Parts' Waldorf store that he had contacted at least one General Parts customer following his resignation. *Id.* at ¶ 32. Finally, General Parts alleges that St. Clair's actions violate the Maryland Uniform Trade Secret Act (Count III).

Contemporaneously with the filing of its Complaint, General Parts filed a Motion for a temporary restraining order ("TRO") and preliminary injunctive relief. Doc. No. 2. St. Clair was served with the Complaint and TRO motion the same day it was filed with the Court, on December 12, 2011. The Court attempted to reach Defendant to schedule an emergency telephonic hearing but was unsuccessful. Accordingly, the Court will now reach the merits of General Parts' Motion for a TRO and will schedule a hearing within the next fourteen days to address General Parts' Motion for a preliminary injunction.

## II.   Discussion

### A.   Standard of Review

"While a preliminary injunction preserves the status quo pending a final trial on the merits, a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999). Federal Rule of Civil Procedure 65(b) deals with TROs and is

designed to ensure that parties against whom an order is issued who have not received notice are given an opportunity to present their case within 14 days after issuance of the TRO. *See* Fed. R. Civ. P. 65(b)(2).

The standard for granting a TRO under Rule 65(b) is the same as for granting a preliminary injunction. *See, e.g., Sindram v. City of Takoma Park Police*, Civ. No. PJM-10-681, 2010 WL 1375353, at *2 (D. Md. Mar. 26, 2010). To obtain a TRO, the moving party must show that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009) *vacated on other grounds by* ---- U.S. ----, 130 S.Ct. 2371 (2010) *and reissued in part*, 607 F.3d 355 (4th Cir. 2010) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, (2008)). The moving party bears the burden of showing all four factors. *Id.* at 345-46.

B. General Parts' Motion

Where a Court finds that a defendant has received notice of the application for restraining order, it may convert a TRO motion into a motion for preliminary injunction. *See CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*, 859 F. Supp. 945, 948-49 (D. Md. 1994) (treating a motion for a TRO as a motion for preliminary injunction where the defendants had notice of the suit for more than four months). In the instant action, General Parts served St. Clair with General Parts' Motion for TRO yesterday, concurrently with the Complaint. However, St. Clair cannot be reached to discuss the TRO, and counsel for General Parts have no knowledge as to whether St. Clair has yet obtained representation. For this reason, the Court finds that St. Clair has not had sufficient notice and opportunity to be heard in this matter and accordingly declines

4

to treat the present determination as one for a preliminary injunction. Rather, the Court will only consider General Parts' Motion for a TRO at this juncture and intends to hold a hearing before the expiration of the TRO to consider General Parts' Motion for preliminary injunction.

1. Likelihood of Success on the Merits

a. Breach of Contract Claims

General Parts must make a "*clear showing* that it is *likely* to succeed at trial on the merits." *Real Truth*, 575 F.3d at 351. General Parts' first two claims are based on breaches of restrictive covenants in the Joint Venture Agreement and the Stock Agreement. Under Maryland law, to enforce a restrictive covenant, "(1) the employer must have a legally protected interest, (2) the restrictive covenant must be no wider in scope and duration than is reasonably necessary to protect the employer's interest, (3) the covenant cannot impose an undue hardship on the employee, and (4) the covenant cannot violate public policy." *Deutsche Post Global Mail, Ltd. v. Conrad*, 116 F. App'x 435, 438 (4th Cir. 2004) (citing *Silver v. Goldberger*, 188 A.2d 155, 158-59 (1963)). Whether a particular restraint is reasonable depends on the specific facts of the case. *Ruhl v. F.A. Bartlett Tree Expert Co.*, 225 A.2d 288, 291 (1967).

General Parts focuses on the language of the covenants. The Joint Venture Agreement provides that St. Clair may not, for a period of 1.5 years after termination, "compete" with his employer "either as a principal, employee or agent in a business which competes" with his employer "in the geographic area within a 15 mile radius of the principal location(s)" of his employer. Doc. No. 1 Ex. 1. The Stock Agreement provides that St. Clair may not, for a period of 1.5 years after termination, "disclose the Corporation's customer lists, either directly or indirectly" or "solicit business from the Corporation's Key Account List." Doc. No. 1 Ex. 2.

5

The Fourth Circuit, applying Maryland law, has agreed that the "plain meaning of 'solicit' requires the initiation of contact." *Mona Elec. Group, Inc. v. Truland Serv. Corp.*, 56 F. App'x 108, 110 (4th Cir. 2003) (per curiam). General Parts alleges that on or about December 2, 2011, St. Clair admitted to an employee of General Parts that he had contacted at least one General Parts customer following his resignation. Compl. ¶ 32. Thus, St. Clair has solicited at least one of General Parts' customers.

Moreover, General Parts' allegations strongly suggest that St. Clair is competing for General Parts' customers. General Parts alleges that several of its customers have contacted its Waldorf store since St. Clair's resignation and inquired into the circumstances surrounding St. Clair's departure and subsequent employment with Federated. *Id.* This suggests that the customers' interest in General Parts was predicated on St. Clair's employment there, and that those same customers may now be interested in defecting to Federated. That General Parts' customers are aware of St. Clair's new employment mere weeks after his resignation is also indicative of solicitation.

### (1) Legally Protected Interest

Employers "have a protectable interest in preventing an employee from using the contacts established during employment to pirate the employer's customers." *Holloway*, 572 A.2d at 515. St. Clair had access to confidential customer information and was responsible for developing, extending and maintaining good relationships with customers for and on behalf of General Parts. Compl. ¶ 11. Accordingly, the Court finds that General Parts had a legally protected interest in preventing St. Clair from using these relationships to bring new business to Federated.

### (2) Reasonableness

"A covenant not to compete is enforceable if its duration and geographic area are only so broad as is reasonably necessary to protect the employer's business . . ." *Intelus Corp. v. Barton*, 7 F. Supp. 2d 635, 641 (D Md. 1998) (citing *Holloway v. Faw, Casson & Co.*, 572 A.2d 510, 515 (1990)). The Joint Venture Agreement restricts St. Clair's ability to compete with General Parts for 1.5 years and within a 15-mile radius. Doc. No. 1 Ex. 1. The Stock Agreement restricts St. Clair from soliciting General Parts' customers or disclosing confidential information for 1.5 years. Doc. No. 1. Ex. 2. Other Maryland cases have enforced provisions of similar duration and geographic scope. *See PADCO Advisors, Inc. v. Omdahl*, 179 F. Supp. 2d 600, 606 (D. Md. 2002) (enforcing a two-year non-compete restriction); *see also Intelus Corp. v. Barton*, 7 F. Supp. 2d 635, 641 (D. Md. 1998) (enforcing a restriction with no geographic limitation where the plaintiff competed for business on a national, if not global basis).

Moreover, the Court finds that the scope of the proscribed activity is properly bounded. General Parts does not seek to prohibit St. Clair from working in any capacity with any company, including Federated, that competes with General Parts. Rather, General Parts merely seeks to prohibit St. Clair from competing for customers within a 15-mile radius, and from soliciting General Parts' customers and sharing General Parts' confidential information with Federated. These prohibitions are reasonably necessary to protect General Parts' customer goodwill and are narrowly tailored to that end. Accordingly, the Court finds that the restrictions contained in the Joint Venture Agreement and Stock Agreement are reasonable.

### (3) Undue Hardship

As discussed *supra*, the Court finds that the restrictive covenants are sufficiently narrow that they pose no undue hardship on St. Clair. Under the TRO St. Clair needn't cease his employment with Federated, as long as he can work for Federated outside the 15-mile radius set

7

forth in the Joint Venture Agreement. Moreover, St. Clair may continue to solicit new clients for Federated and is merely restricted in his ability to solicit General Parts' customers.

**(4) Public Policy**

[T]he public has an interest in the enforcement of reasonable restrictive covenants." *Intelus*, 7 F. Supp. 2d at 642. Because the Court has determined that the covenants at issue are reasonable and enforceable, public policy considerations weigh in favor of enforcement. Accordingly, General Parts has shown sufficient likelihood of success on the merits to sustain its breach of contract claims.

        b.        Misappropriation of Trade Secrets Claim

The Maryland Uniform Trade Secrets Act ("MUTSA") provides statutory remedies for the misappropriation of trade secrets. Under the statute, "misappropriation" means the:

> [d]isclosure or use of a trade secret of another ... by a person who ... [a]t the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was ... [a]quired under circumstances giving rise to a duty to maintain its secrecy or limit its use[.]

Md. Code Ann., Com. Law § 11-1201(c) (West 2011). MUTSA defines "trade secret" as:

> information ... that: (1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.* at § 11-1201(e). Maryland courts have recognized customer lists as trade secrets. *MCS Servs., Inc. v. Jones*, Civ. No. WMN-10-1042, 2010 WL 3895380, at *6 (D. Md. Oct. 1, 2010) ("There is no question that a customer list can constitute a trade secret.") (quoting *Home Paramount Pest Control Cos. v. FMC Corp.*, 107 F. Supp. 2d 684, 692 (D. Md. 2000)).

In the instant action, St. Clair was aware of his obligation to keep confidential General Parts' customer lists, which General Parts considered trade secrets, so Federated's acquisition of any of General Parts' trade secrets could plausibly constitute misappropriation. General Parts alleges that while employed by General Parts, St. Clair had access to confidential customer information, including customer-specific information relating to buying history and trends, cost information, pricing information, training materials and concepts, sales reporting data and strategic and marketing plans. Compl. ¶ 53. General Parts alleges that disclosure of such trade secret information is inevitable as a result of St. Clair's actions and apparent job duties in his new employment with Federated. *Id.* at ¶ 57.

Furthermore, General Parts has alleged sufficient facts upon which the Court can find that the customer lists constitute trade secrets under the MUTSA. General Parts alleges that the extensive customer-specific information it has gathered is of great economic value to it. *Id.* at ¶ 54. General Parts additionally contends that it has made reasonable efforts to protect the confidentiality of this information, including the restrictive covenants contained in St. Clair's Joint Venture Agreement and Stock Agreement. *Id.* ¶ 55. Accordingly, General Parts has shown a likelihood of success on the merits of its Misappropriation of Trade Secrets claim.

2. Irreparable Harm

Irreparable harm is generally found where the moving party suffers a harm that cannot be compensated by an award of money damages. *See Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994). "When the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied." *Wachovia Ins. Serv., Inc. v. Hinds*, Civ. No. WDQ-07-

2114, 2007 WL 6624661, at *3 (D. Md. Aug. 30, 2007) (quoting *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994)). Irreparable harm must be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (quotation and citation omitted).

In the instant action, General Parts contends that it will suffer irreparable harm because St. Clair possesses confidential and proprietary information that is the business' lifeline, and if St. Clair continues to solicit General Parts' customers, General Parts will lose goodwill amongst those customers, potentially lose current and future business opportunities, and will lose the value of the confidential, proprietary and strategic information it entrusted to St. Clair.

General Parts has demonstrated a probability that it will lose customers to Federated absent injunctive relief. On December 2, 2011, St. Clair admitted to an employee of General Parts that he had contacted at least one General Parts customer following his resignation. Compl. ¶ 32. General Parts also alleges that several other customers have contacted one of its stores following St. Clair's resignation inquiring into the circumstances surrounding his departure and subsequent employment with Federated. *Id.* The fact that other customers are interested in St. Clair's new employment and that St. Clair is reaching out to General Parts' customers suggests that General Parts faces an imminent and actual risk of losing these customers to Federated. The fact that St. Clair is employed in the same position at Federated that he was at General Parts, and that he has already reached out to a General Parts' customer, suggests that there is a great risk that St. Clair has already or will soon misappropriate General Parts' inside information, including its customer lists. Accordingly, General Parts has established a likelihood of irreparable harm in the absence of immediate injunctive relief.

3. Balance of the Equities

General Parts contends that the balance of the equities is one-sided in its favor because it faces irreparable harm absent a TRO, while the reasonable scope of the TRO suggests the harm to St. Clair will be minimal at best. The Court agrees. As discussed above, the Court finds that the restrictive provisions in the Joint Venture Agreement and Stock Agreement are narrowly tailored to protect General Parts' legitimate business interests and are reasonable in scope. General Parts is not seeking to altogether prevent St. Clair from continuing his employment with Federated, as long as he works outside the geographic limit set forth in his agreement and does not solicit his former General Parts customers.

4. Public Interest

"The public interest prong has been equated with preserving the status quo until the merits can be fully considered by the trial court." *Wachovia Ins. Servs.*, 2007 WL 6624661, at *9 (citation omitted). As the Court discussed *supra*, the public interest in the instant action weighs in favor of enforcing the Agreements' reasonable contractual restrictions. Because the balance of harms and likelihood of success on the merits weigh in favor of General Parts, the Court finds that the public interest is served by preserving the status quo and granting General Parts' motion for a TRO.

## III. Conclusion

For the foregoing reasons, General Parts' motion for a TRO will be granted and the Court will set a date for a hearing on General Parts' motion for a preliminary injunction. A separate

Order will follow.

December 14, 2011                                              /s/
      Date                               Alexander Williams, Jr., c/o J. Frederick Motz
                                             United States District Judge